UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WOODSTOCK VENTURES LC and THE
WOODSTOCK CANNABIS COMPANY,
LLC

               Plaintiff/Counterclaim Defendants,

- against -

WOODSTOCK ROOTS, LLC,
WOODSTOCK PRODUCTS COMPANY
INTERNATIONAL, LLC d/b/a
WOODSTOCK AMERICAN PRODUCTS,
WOODSTOCK CANNABIS COMPANY,
LLC, AXCENTRIA PHARMACEUTICALS
LLC, CHET-5 BROADCASTING, LP, and
GARY CHETKOF

               Defendants/Counterclaim Plaintiffs.

**<u>ORDER</u>**

18 Civ. 1840 (PGG)

     The Complaint in this action was filed on February 28, 2018, and alleges that

Defendants have engaged in trademark infringement by selling recreational marijuana under the

WOODSTOCK trademark. (Cmplt. (Dkt. No. 1) ¶ 1)  Plaintiffs are the producers of the 1969

Woodstock music festival and have used the WOODSTOCK mark in association with concerts,

motion pictures, television programs, and merchandise. (Id. ¶ 32)  Plaintiffs own a variety of

federally-registered trademarks for the mark WOODSTOCK, which concern entertainment

services, clothing, and other merchandise, such as posters. (Id.)  Plaintiffs claim that recreational

marijuana falls within their "natural zone of expansion" under federal trademark law and, as a

result, Defendants are prohibited from using the mark in association with recreational marijuana.

(Id. ¶ 253)  Plaintiffs have not sought a temporary restraining order or a preliminary injunction.

Defendants filed their Answer and Counterclaims on June 11, 2018. (Dkt. No. 30) Defendants contend that – in connection with the radio station Radio Woodstock – they have "used the WOODSTOCK mark for more than thirty-five years for a variety of goods and services." (Answer (Dkt. No. 30) at 37)[1] Defendants assert that in 2008, Defendants and Plaintiffs entered into a "Co-Existence Agreement" in which they recognized that both Defendants and Plaintiffs "have rights in the WOODSTOCK mark; Defendants for broadcasting and promotional goods and services, and Plaintiffs for entertainment and promotional goods and services." (Id. at 37-38)

Defendants further allege that "[m]ore than five years ago," Defendants sought and obtained "federal registration of the WOODSTOCK mark for smokers' articles and related goods and services" – including tobacco-free electronic cigarettes for medical purposes, vaporizer pipes, and cigarette rolling papers – and that "[c]annabis and cannabis-related products are within a logical zone of expansion for Defendants as to Defendants' WOODSTOCK marks and registration for smokers' articles." (Id. at 38; Fed. Reg. No. 5,612,311 (Dkt. No. 91-1) (the "'311 Registration"); Fed. Reg. No. 5,380,815 (Dkt. No. 91-1) (the "'815 Registration"))

According to Defendants, "[s]ometime after Defendants' application for federal registration of the WOODSTOCK mark for smokers' articles, Plaintiffs began infringing on Defendants' rights by introducing directly competitive products to the market bearing variants of the WOODSTOCK mark." (Answer (Dkt. No. 30) at 38) In particular, Defendants contend that Plaintiffs may not lawfully use the WOODSTOCK mark in connection with the sale of marijuana and marijuana-related products, and that by doing so, Plaintiffs "have infringed on

---

[1] Except as to deposition transcripts, all citations in this Order reflect page numbers assigned by this District's Electronic Case Filing system. Citations to depositions reflect the transcript page numbers.

Defendants['] rights to use the WOODSTOCK mark on smokers' articles and related goods and services." (Id. at 38-39, 49-50)

On August 27, 2018, Defendants moved for a preliminary injunction seeking to enjoin Plaintiffs from selling "cannabis and cannabis-related products" bearing the WOODSTOCK mark. (See Def. PI Br. (Dkt. No. 49))  Defendants' application for a preliminary injunction is premised on their federal trademark registrations. (Id. at 7 ("[Plaintiffs'] cannabis and cannabis-related products overlap with, and are inextricable related to, the goods covered by [Defendants'] common law and federally registered rights for the WOODSTOCK Mark for smokers' articles. . . ."))  Defendants contend that Plaintiffs are selling "cannabis and cannabis-related products in the same channels of trade, and to the same customers, as [Defendants]." (Id. at 13)

Defendants do not specify in their Answer or in their preliminary injunction papers what "cannabis-related" products sold by Plaintiffs infringe on Defendants' WOODSTOCK mark.  As best as this Court can determine, however, it appears that Defendants object to Plaintiffs' sale of WOODSTOCK-branded recreational marijuana and vaping devices. (Def. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 99) at 42; Def. PI Br. (Dkt. No. 49) at 13; Litwack Decl. (Dkt. No. 42) ¶ 19)

Defendants claim that Plaintiffs' "overlapping products bear a WOODSTOCK Mark *identical* to [Defendants'] federally registered mark for certain smokers' articles," which includes tobacco-free electronic cigarettes for medical purposes, vaporizer pipes, and cigarette rolling papers. (Def. PI Br. (Dkt. No. 49) at 13 (emphasis in original); '311 Registration (Dkt. No. 91-1); '815 Registration (Dkt. No. 91-1))  Defendants contend that Plaintiffs' sale of recreational marijuana and "cannabis-related" products – which the Court understands to be a

reference to vaping devices – infringes on their mark for "smokers' articles" and has caused them irreparable harm. (Def. PI Br. (Dkt. No. 49) at 23; Def. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 99) at 42 ("Plaintiffs' federally unlawful marijuana products include vaping devices similar to the vaping devices Defendants sell.")

In February 2019, the Honorable Robert W. Sweet – to whom this action was assigned – conducted a three-day hearing concerning Defendants application for a preliminary injunction. Judge Sweet died on March 24, 2019, and on April 1, 2019, this action was reassigned to this Court.

Having reviewed, inter alia, the transcripts of the February 2019 hearing and the parties' competing proposed findings of fact and conclusions of law (Dkt. Nos. 99, 100), the Court concludes that Defendants have not demonstrated a likelihood of success on the merits of their trademark infringement claim, because they have not demonstrated a likelihood of confusion arising from Plaintiffs' use of the WOODSTOCK mark for recreational marijuana and vaping devices and Defendants' use of the WOODSTOCK mark for "smokers' articles." Accordingly, Defendants' motion for a preliminary injunction will be denied.

## DISCUSSION

As discussed above, Defendants contend that they are entitled to a preliminary injunction because Plaintiffs' use of the WOODSTOCK mark in connection with the sale of "cannabis and cannabis-related products" infringes on Defendants' WOODSTOCK trademark as used for "smokers' articles," in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114, and § 43 of the Lanham Act, 15 U.S.C. § 1125(a). (Def. PI Br. (Dkt. No. 49) at 16; see also Answer (Dkt. No. 30) ¶¶ 63-72)

4

Defendants own two federal trademark registrations:  Registration No. 5380815 and Registration No. 5612311.  (See '311 Registration (Dkt. No. 91-1); '815 Registration (Dkt. No. 91-1))  The '815 Registration grants Defendants the right to use the WOODSTOCK mark on "cigarette rolling papers" and "lighters for smokers." ('815 Registration (Dkt. No. 91-1))  The '311 Registration grants Defendants the right to use the WOODSTOCK mark on "tobacco free electronic cigarettes for medical purposes comprised of e-liquids derived from the mature stalks of industrial hemp exclusive of any resins," and "cigarette cases; smokeless cigarette vaporizer pipes for use with either tobacco-based e-liquids or e-liquids derived from the mature stalks of industrial hemp exclusive of any resins." ('311 Registration (Dkt. No. 91-1))

Plaintiffs claim that they have been selling WOODSTOCK-branded recreational marijuana since December 2016. (Feb. 8, 2019 Tr. (Dkt. No. 105) 483:20-22)  Defendants have been aware of Plaintiffs' sale of WOODSTOCK-branded recreational marijuana since at least July 2017, because Plaintiffs sent Defendants a cease and desist letter at that time stating that "[Plaintiffs are] currently and actively engaged in the licensing and sale of recreational marijuana." (Feb. 8, 2019 Tr. (Dkt. No. 105) 492:10-12; July 21, 2017 Cease and Desist Letter (Dkt. No. 49-2))  It was not until August 27, 2018, that Plaintiffs filed their motion for a preliminary injunction.[2] (Def. PI Br. (Dkt. No. 49))

---

[2]  As discussed below, the Court concludes that Defendants have not demonstrated a likelihood of success on their counterclaims for trademark infringement.  Defendants' delay in moving for a preliminary injunction also raises a significant issue, however.  As discussed above, Defendants have been aware of Plaintiffs' sale of WOODSTOCK-branded recreational marijuana since at least July 2017 (see July 21, 2017 Cease and Desist Letter (Dkt. No. 49-2)), but they did not file their motion for a preliminary injunction until August 27, 2018, more than a year later.  A delay of this length "'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" Citibank, N.A. v. Citytrust, 756 F.2d 273, 277 (2d Cir. 1985) (quoting Le Sportsac, Inc. v. Dockside Research, Inc., 478 F. Supp. 602, 609 (S.D.N.Y. 1979)); see also Majorica, S.A. v. R.H. Macy & Co., 762 F.2d 7, 8 (2d Cir. 1985) ("Lack of diligence, standing alone, may . . . preclude the granting of

In a typical trademark infringement action, the parties offer substantial evidence as to how their marks are displayed in the marketplace. Color, font, typeface, and other style and design features can be important in determining whether there is a likelihood of confusion. See e.g., Juicy Couture, Inc. v. Bella Int'l Ltd., 930 F. Supp. 2d 489, 500 (S.D.N.Y. 2013) (noting that when courts "evaluat[e] the similarity of marks," they "'look to the overall impression created by the [marks] and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers'" (quoting Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1078 (2d Cir. 1993)); J.T. Colby & Co. v. Apple Inc., No. 11 CIV. 4060 DLC, 2013 WL 1903883, at *16 (S.D.N.Y. May 8, 2013) (in considering whether there is a likelihood of confusion, "it is appropriate to consider 'the products' sizes, logos, typefaces, and package designs,' in addition to any other contextual clues that might serve to distinguish the marks." (quoting W.W.W. Pharm. Co., Inc. v. Gillette Co., 984 F.2d 567, 573 (2d Cir. 1993))).

Here, Defendants – the parties seeking a preliminary injunction – have offered no exemplars of how their WOODSTOCK mark is displayed in the marketplace. Plaintiffs have submitted evidence showing that their WOODSTOCK mark is displayed in a "bubble" font, and with a dove and guitar logo prominently featured in association with the word WOODSTOCK. (See Plaintiffs' product packaging (Dkt. No. 57-48)) Plaintiffs have also submitted certain social

---

preliminary injunctive relief, because it goes primarily to the issue of irreparable harm rather than occasioned prejudice."); Can't Stop Prods., Inc. v. Sixuvus, Ltd., 295 F. Supp. 3d 381, 401 (S.D.N.Y. 2018) ("Here, Defendants were notified on May 30, 2017, that the license would be terminated, but did not move for injunctive relief until December 1, 2017. Defendants' six-month delay impedes their ability to show irreparable harm absent injunctive relief."); Empower Energies, Inc. v. SolarBlue, LLC, No. 16CV3220 (DLC), 2016 WL 5338555, at *12 (S.D.N.Y. Sept. 23, 2016) ("A period of delay in bringing a motion for preliminary relief may indicate 'an absence of the kind of irreparable harm required to support a preliminary injunction.'" (quoting Citibank, N.A., 756 F.2d at 276)).

media postings of Defendants in which Defendants' WOODSTOCK mark is shown.

Defendants' WOODSTOCK mark is in a more standardized, non-bubble format, and is presented

in conjunction with the words "American Products."  (PX 9 (Defendants' social media posts))

Plaintiffs' WOODSTOCK mark is show below, followed by Defendants'

WOODSTOCK mark.



(Dkt. No. 57-51)



(PX 9)

## I.      LEGAL STANDARDS

A court may issue a preliminary injunction only where

the plaintiff has demonstrated "either (a) a likelihood of success on the merits or
(b) sufficiently serious questions going to the merits to make them a fair ground
for litigation . . . ."  Second, the court may issue the injunction only if the plaintiff
has demonstrated "that he is likely to suffer irreparable injury in the absence of an
injunction." . . . Third, a court must consider the balance of hardships between the
plaintiff and defendant and issue the injunction only if the balance of hardships
tips in the plaintiff's favor.  Finally, the court must ensure that the "public interest
would not be disserved" by the issuance of a preliminary injunction.

Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010).

Defendants' application for a preliminary injunction is premised on the argument that Plaintiffs' use of the WOODSTOCK mark in connection with the sale of recreational marijuana and vaping devices creates a likelihood of consumer confusion with Defendants WOODSTOCK-branded goods, in that consumers will conclude that Plaintiffs' recreational marijuana and vaping devices are associated with Defendants' WOODSTOCK-branded goods. (Def. PI Br. (Dkt. No. 49) at 16-23; Def. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 99) at 42). "In an action for trademark infringement, where a mark merits protection, a showing that a significant number of consumers are likely to be confused about the source of the goods identified by the allegedly infringing mark is generally sufficient to demonstrate both irreparable harm and a likelihood of success on the merits." Virgin Enterprises Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003).

Here, Defendants' application for a preliminary injunction turns on the question of whether Defendants have demonstrated a likelihood of success on their trademark infringement claim.

A claim for trademark infringement is analyzed under a two-prong test, which "looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." (Id.) A mark is entitled to protection when it is inherently distinctive; if the mark is 'merely descriptive,' . . . it qualifies for protection only if it has acquired secondary meaning." Time Inc. v. Petersen Pub. Co. L.L.C., 173 F.3d 113, 117 (2d Cir. 1999).

To determine whether there is a likelihood of confusion between two sets of marks, courts look to the following eight factors set forth in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961): "(1) the strength of the [movant's] mark; (2) the similarity

of the marks; (3) the competitive proximity of the products in the marketplace; (4) the likelihood that the senior user will 'bridge the gap' by moving into the junior user's product market; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the respective quality of the products; and (8) the sophistication of the consumers in the relevant market." Juicy Couture, 930 F. Supp. 2d at 499 (citing Polaroid, 287 F.2d at 495).

## II.   ANALYSIS

### A.   Protectability of Defendants' Marks

Plaintiffs do not dispute that the WOODSTOCK mark is distinctive.  Indeed, they concede that "the mark WOODSTOCK for cannabis is arbitrary and, thus, inherently distinctive." (Pltf. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 100) at 57) Plaintiffs contend, however, that Defendants have no right to bring a claim for trademark infringement because Plaintiffs – and not Defendants – have priority rights to the use of the WOODSTOCK mark on "smokers' articles." (See id. at 44 ("The evidence presented at the hearing established that Plaintiffs had been engaged in the marketing and sale of smokers' articles since 1994, and that sales of smokers' articles under the WOODSTOCK brand have been open and continuous to the present."))

Defendants counter that they have priority rights over the WOODSTOCK mark for "smokers' articles," because their constructive first use of the WOODSTOCK mark on smokers' articles pre-dates any actual use by Plaintiffs. (Def. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 99) at 50) Defendants contend that they "enjoy a constructive first use priority date of October 3, 2013" – the date they filed their application for trademark rights in "smokers' articles." (Id.) They further contend that Plaintiffs did not sell marijuana until either 2016 or 2017. (Id. at 50-51) Therefore, according to Defendants, their constructive first use date pre-dates Plaintiffs' sales of marijuana.

9

"[E]xclusive rights in a trademark are acquired not by registration, but through prior appropriation and use." 4 Pillar Dynasty LLC v. Saucony, Inc., No. 1:16-CV-2824-GHW, 2017 WL 1906868, at *4 (S.D.N.Y. May 8, 2017). Accordingly, "'[t]he user who first appropriates the mark obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially.'" H.W. Carter & Sons, Inc. v. William Carter Co., 913 F. Supp. 796, 802 (S.D.N.Y. 1996) (quoting La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1271 (2d Cir. 1974)).

Here, this Court need not resolve the issue of whether Plaintiffs or Defendants have established priority rights in the WOODSTOCK mark as used for "smokers' articles," because – even assuming that Defendants have trademark priority in the mark WOODSTOCK for "smokers' articles" – Defendants have not shown a likelihood of confusion between their WOODSTOCK-branded products and Plaintiffs' sale of WOODSTOCK-branded recreational marijuana and vaping devices.

**B.      Likelihood of Confusion – Analysis of the *Polaroid* Factors**

**1.      Strength of Defendants' Marks**

"A mark's strength is measured by two factors: '(1) the degree to which it is inherently distinctive; and (2) the degree to which it is distinctive in the marketplace.'" Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc., 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018) (quoting W.W.W. Pharm., 984 F.2d at 572); see also Juicy Couture, 930 F. Supp. 2d at 499 ("A mark's strength may be based on its inherent distinctiveness or the distinctiveness it has acquired in the marketplace."). "These factors have been labeled

'conceptual strength' and 'commercial strength.'" <u>Alzheimer's Disease</u>, 307 F. Supp. 3d at 287

(quoting 2 McCarthy on Trademarks § 11:83 (5th ed.))

   As noted above, Plaintiffs concede that the WOODSTOCK mark is conceptually

distinctive. (<u>See</u> Pltf. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 100) at 57)

Plaintiffs argue, however, that Defendants' mark is not distinctive in the marketplace. (<u>Id.</u> at 58

("An analysis of the 'commercial strength' prong of the first <u>Polaroid</u> factor, however, weighs

heavily in Plaintiffs favor."))

   "In determining whether a mark has acquired [commercial] distinctiveness, courts

consider a number of non-exhaustive factors: (1) advertising expenditures; (2) sales success; (3)

unsolicited media coverage of the product; (4) attempts to plagiarize the mark; (5) the length and

exclusivity of the mark's use; and (6) consumer studies linking the name to the source." <u>Juicy</u>

<u>Couture</u>, 930 F. Supp. 2d at 499.

   Here, Defendants have offered evidence that they advertised on their "own

website," "display[ed] advertising,"[3] engaged in "search engine optimization, did some

advertising on Radio Woodstock . . . , and did a number of other social media events for . . .

[their] federally permitted products." (Feb. 7, 2019 Tr. (Dkt. No. 103) at 187:3-197:9; 199:9-

199:14) Defendants also produced a brand guide and engaged a "street team" to generate a

social media presence online. (<u>See</u> DX 14 (brand guide); Feb. 7, 2019 Tr. (Dkt. No. 103) at

210:7-212:19)) Although Defendants contend that they have incurred "at least $249,000 in

marketing expenses," they have provided little information as to what services were purchased

with that money. (Def. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 99) at 27)

Defendants have likewise not offered evidence of sales success, unsolicited media coverage of

---

[3] Defendants provide no details concerning their alleged display of advertising.

their products, attempts to plagiarize their mark, or consumer studies linking the WOODSTOCK mark to Defendants. Moreover, the evidence indicates that Defendants' gross sales of WOODSTOCK-branded products from September 1, 2017 through January 31, 2019 were only $12,837. (Feb. 7, 2019 Tr. (Dkt. No. 103) at 201:18-21; DX 16 (Woodstock gross sales))

In sum, acknowledging that Defendants' mark is conceptually strong, the evidence demonstrates that it is commercially weak. Accordingly, this factor weighs only modestly in Defendants' favor.

### 2.     Similarity of the Marks

"When evaluating the similarity of marks, 'courts look to the overall impression created by the [marks] and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers.'" Juicy Couture, 930 F. Supp. at 500 (quoting Gruner + Jahr USA Publ'g, 991 F.2d at 1078) "The fact that the marks use the same word is not dispositive if the differences in the ways the marks are presented in the marketplace make confusion less likely." J.T. Colby, 2013 WL 1903883, at *16. "In this regard, it is appropriate to consider 'the products' sizes, logos, typefaces, and package designs,' in addition to any other contextual clues that might serve to distinguish the marks." Id. (quoting W.W.W. Pharm., 984 F.2d at 573).

As discussed above, there is little evidence here as to the typeface, color, font, style, and design of Defendants' WOODSTOCK mark. Indeed, Defendants have offered no evidence as to how their mark is typically displayed.

Plaintiffs have offered evidence that their WOODSTOCK mark is displayed in a "bubble" font and is always accompanied by a prominent dove and guitar logo, while Defendants' WOODSTOCK mark is never accompanied by a dove and guitar logo. (Pltf. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 100) at 14; Plaintiffs' product

packaging (Dkt. No. 57-48); Def. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 99) at 15 ("Litwack sought a license specifically for the word Woodstock, rather than a license for the dove and guitar mark . . . ."); id. at 23 (stating that Defendants have not used any image with a dove "in any customer-facing advertising or marketing materials"). Defendants' social media posts for their WOODSTOCK-branded products show a more standardized, non-bubble font; a reference to "American Products"; and no dove and guitar logo. (PX 9) Suffice it to say that the "overall impression" of the two marks is substantially different.

   While Defendants concede that Plaintiff's distinctive dove and guitar logo is associated with Plaintiffs' WOODSTOCK mark (see Feb. 7, 2019 Tr. (Dkt. No. 103) 168:2-6 (Q: Do you recognize that to be a dove associated with Woodstock Ventures?  A: Yes, I do.); 174:6-8 (Q: You understand that to be the Woodstock Ventures dove and guitar?  A: Yes, I do.)), they contend that Plaintiffs' use of the dove and guitar logo with their WOODSTOCK mark has no legal significance.  According to Defendants, "any form of the word 'Woodstock' used by Plaintiffs on their competing goods is not merely similar, but identical to Defendants' Smokers' Articles Mark."  (See Pltf. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 99) at 41) (emphasis in original).

   The Court disagrees.  The different fonts of the parties' marks; Plaintiffs' use of the prominent dove and guitar logo in conjunction with their WOODSTOCK mark; and Defendants' use of the term "American Products" in connection with their WOODSTOCK mark all undercut Defendants' arguments concerning the likelihood of confusion in the marketplace. See J.T. Colby, 2013 WL 1903883, at *17 (finding two marks that share the same word – IBOOKS – distinguishable because, among other things, one mark is "depicted next to an image of an open book against a wood-colored background"); see also Nabisco, Inc. v. Warner-Lambert

Co., 220 F.3d 43, 47 (2d Cir. 2000) (finding marks dissimilar because "the parties present[ed] their marks in starkly different typefaces and styles").

Given the differences in how the parties present their WOODSTOCK marks in the marketplace, the "similarity of marks" factor does not favor the issuance of a preliminary injunction.

### 3.   Proximity of the Products in the Marketplace

"The third Polaroid factor considers the extent to which the parties' products compete with each other for customers." Juicy Couture, 930 F. Supp. 2d at 501. "In considering this factor, courts examine 'the nature of the products themselves and the structure of the relevant market,' including 'the manner in which the products are advertised, and the channels through which the goods are sold.'" Id. (quoting Cadbury Beverages v. Cott Corp., 73 F.3d 474, 48 (2d Cir. 1996)).

Defendants argue that there is commercial proximity here, because "both parties sell vaping devices" and "both parties market their products to the same consumers." (Def. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 99) at 42)  Defendants cite testimony indicating that (1) Plaintiffs are marketing "vape pens," which are used to consume recreational marijuana (Feb. 8, 2019 Tr. (Dkt. No. 105) at 372:4-14); (2) Defendants are collaborating with the manufacturer of "a vaping device" (Feb. 7, 2019 Tr. (Dkt. No. 103) at 198:17-23); and (3) Plaintiffs and Defendants are both targeting millennials, as well as older adults.  (Compare Feb. 8, 2019 Tr. (Dkt. No. 105) at 379:11-12) with Feb. 7, 2019 Tr. (Dkt. No. 103) at 196:8-13)

Plaintiffs sell their recreational marijuana and vaping products at state-licensed marijuana dispensaries.  (Pltf. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 100) at 61 ("Plaintiffs' marijuana products are to be sold in licensed cannabis dispensaries where legal

14

under state law."); see also (Feb. 8, 2019 Tr. (Dkt. No. 105) at 372:11-13 (Q: How many dispensaries does Harmony presently sell Woodstock-branded products to approximately? A: Now? I would say three or four hundred.); (Feb. 8, 2019 Tr. (Dkt. No. 105) at 385:16-18 (Q: Can you sell recreational cannabis in New York? A: If we – not recreational, not today, but we can sell medical.))  Although Defendants have offered little if any evidence that their products are sold in state-licensed marijuana dispensaries, they assert, in a conclusory fashion, that Defendants' products are sold at these locations.  (Litwak Decl. (Dkt. No. 42) ¶ 19 (asserting that Plaintiffs will sell their "improper and infringing goods in the same trade channels (i.e., smoke shops and dispensaries) and to the same customers (i.e., patrons of those smoke shops and dispensaries) as Woodstock Products' WOODSTOCK goods are marketed and sold."); see also Feb. 7, 2019 Tr. (Dkt. No. 103) 198-3-13 (listing Defendants' vendors)).

Assuming arguendo that the parties' WOODSTOCK-branded goods are being sold in the same trade channels, "[t]he different nature" of plaintiffs' and Defendants' products "tempers [any] findings of competitive proximity." Joules Ltd. v. Macy's Merch. Grp., Inc., 695 F. App'x 633, 637 (2d Cir. 2017).  Based on the evidence offered at the hearing and the parties' submissions, the Court concludes that the nature of Plaintiffs' WOODSTOCK-branded recreational marijuana and vaping devices, and Defendants' cannabis-related "smokers' articles," are different.

Plaintiffs' products all involve the use of recreational marijuana, while Defendants have expressly disavowed the notion that their products are intended for use with recreational marijuana. (See Pltf. Proposed Findings of Fact and Conclusions of Law (Dkt. No. 100) at 61; Feb. 8, 2019 Tr. (Dkt. No. 105) at 385:19-387:12 (describing that the "vapable oil" sold by Plaintiffs contains THC and is derived from "the cannabis plant"); see also PX 1

(Defendants' July 18, 2014 submission to U.S. Patent and Trademark Office) ("Applicant believes that, with the clarification that these are not nor do they refer to marijuana or any illegal substance, the description should be clear."))

Accordingly, even if the parties' products are marketed through the same or similar trade channels, this fact does not suggest a likelihood of confusion, because Plaintiffs' products either constitute or are intended for use with recreational marijuana, while Defendants' "smokers' articles" are not intended for use with recreational marijuana. See, e.g., Constellation Brands, Inc. v. Arbor Hill Assocs., Inc., 535 F. Supp. 2d 347, 366 (W.D.N.Y. 2008) (concluding that two alcoholic beverages sold in similar channels are not related because "the nature of the two products is clearly different, since Arbor Hill is traditional table wine, while Arbor Mist is a mix of wine and fruit juice, with a lower alcohol content than most wine.")

The Court concludes that the "proximity in the marketplace" factor does not weigh in favor of granting Defendants' motion for a preliminary injunction.

### 4.  "Bridging the Gap"

"The term 'bridging the gap' is used to describe the senior user's interest in preserving avenues of expansion and entering into related fields." C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc., 753 F.2d 14, 18 (2d Cir. 1985).  Here, Defendants contend that "[c]annabis and cannabis-related products are within a logical zone of expansion for Defendants as to Defendants' WOODSTOCK marks and registration for smokers' articles."  (Answer (Dkt. No. 30) at 38)

In considering Defendants' application for a preliminary injunction, however, this Court cannot give weight to Defendants' alleged intent to expand into the area of selling recreational marijuana, because the sale of recreational marijuana is illegal under federal law. CreAgri, Inc. v. USANA Health Scis., Inc., 474 F.3d 626, 630 (9th Cir. 2007) ("It has long been

the policy of the PTO's Trademark Trial and Appeal Board that use in commerce only creates trademark rights when the use is <u>lawful</u>.") (emphasis in original). Indeed, in moving for summary judgment on Plaintiffs' trademark infringement claims, Defendants argued that "[b]ecause federally unlawful cannabis is still prohibited by federal law, the trademark protection afforded to [Plaintiffs' mark] cannot be extended to federal unlawful cannabis by virtue of the zone of natural expansion." (Def. Sum. J. Br. (Dkt. No. 82) at 9)

Finally, as noted above, when Defendants registered their mark for "smokers' articles," they represented to the U.S. Patent and Trademark Office that their trademark in "smokers' articles" would not be used to market marijuana. (<u>See</u> PX 1 (Defendants' July 18, 2014 submission to U.S. Patent and Trademark Office)) Accordingly, this factor does not weigh in favor of granting a preliminary injunction.

### 5.    <u>Evidence of Actual Confusion</u>

There is no evidence of actual confusion in the marketplace. Accordingly "this factor . . . favors neither party." <u>Juicy Couture</u>, 930 F. Supp. 2d at 501.

### 6.    <u>Bad Faith</u>

"The 'inquiry into willfulness or bad faith considers whether [the non-moving party] adopted its mark with the intention of capitalizing on [the moving party's] reputation and goodwill and on any confusion between his and the senior user's product.'" <u>Id.</u> at 501-02 (quoting <u>De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.</u>, 440 F. Supp. 2d 249, 278 (S.D.N.Y. 2006)).

There is no evidence here that Plaintiffs' use of the WOODSTOCK mark reflects an attempt to capitalize on Defendants' reputation and goodwill. While Defendants contend that they first conceptualized the idea of using the WOODSTOCK mark on "smokers' articles," and that Plaintiffs made numerous attempts to circumvent Defendants' trademark for smokers'

articles by applying to register marks such as "Vapestock" and "Weedstock" (see Def. Proposed

Findings of Fact and Conclusions of Law (Dkt. No. 99) at 22), these allegations do not

demonstrate that Plaintiffs' use of the WOODSTOCK mark on recreational marijuana and

vaping devices is an attempt to "capitaliz[e] on [Defendants'] reputation and goodwill." De

Beers LV Trademark Ltd., 440 F. Supp. 2d at 278.  Indeed, there is no evidence that Defendants

have amassed significant goodwill in the marketplace for recreational marijuana and vaping

devices.

      This factor does not weigh in favor of granting a preliminary injunction.

### 7.    Quality of the Products

      "This factor requires the Court to 'consider[ ] whether the senior user's reputation

could be tarnished by [the] inferior merchandise of the junior user.'" Juicy Couture, 930 F.

Supp. 2d at 502 (quoting Scarves by Vera, Inc. v. Todo Imps. Ltd., 544 F.2d 1167, 1172 (2d Cir.

1976))  There is no evidence that Defendants' reputation has been tarnished by Plaintiffs'

products, and Defendants have made no such argument.  Accordingly, this factor does not weigh

in favor of granting a preliminary injunction.

### 8.    Consumers' Sophistication

      "The final Polaroid factor is 'grounded on the belief that unsophisticated

consumers aggravate the likelihood of confusion.'" Juicy Couture, 930 F. Supp. 2d at 502

(quoting Simon & Schuster, Inc. v. Doce Audio, Inc., 970 F. Supp. 279, 300 (S.D.N.Y. 1997)).

Here, neither side has offered evidence regarding consumer sophistication.  Accordingly this

factor is neutral. Virgin Enterprises Ltd., 335 F.3d at 151 ("Noting that neither side had

submitted evidence on the sophistication of consumers, the court made no finding favoring either

side. We agree that the sophistication factor is neutral in this case.").

         \*      \*      \*      \*

Having considered each of the <u>Polaroid</u> factors, the Court concludes that Defendants have not demonstrated a likelihood of confusion.  The strength of Defendants' marks, the similarities of the parties' marks, and the competitive proximity of the parties' marks – which are "often considered the most significant factors" – do not weigh in Defendants' favor. <u>Juicy Couture</u>, 930 F. Supp. 2d at 503.

Because Defendants have not demonstrated a likelihood of success on their trademark infringement claims, their motion for a preliminary injunction will be denied.

## CONCLUSION

This Order constitutes the Court's findings of fact and conclusions of law.  For the reasons stated above, Defendants' motion for a preliminary injunction is denied.  The Clerk of Court is directed to terminate the motion (Dkt. No. 40).

Dated: New York, New York
       July 29, 2019

SO ORDERED.

Paul G. Gardephe
United States District Judge